FILED
12/13/2022
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 9, 2022

## IN RE: TENNESSEE BONDING COMPANY

**Appeal from the Circuit Court for Dickson County
No. 2018-CV-107   David D. Wolfe, Judge**

_____

### No. M2021-01423-CCA-R3-CD

_____

Pursuant to Tennessee Code Annotated section 40-11-125, the Dickson County Circuit Court suspended Tennessee Bonding Company as a company authorized to write bail bonds in the Twenty-Third Judicial District.  The trial court found that the company had not paid a final forfeiture and had made and filed semi-annual reports containing false statements.  On appeal, Tennessee Bonding Company challenges these rulings.  We respectfully affirm the judgment of the trial court.

**Appeal Pursuant to Tenn. Code Ann. § 40-11-125(d);
Judgment of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Cayley J. Turrin, Franklin, Tennessee, for the appellant, Tennessee Bonding Company.

Jonathan Skrmetti, Attorney General and Reporter; Katharine K. Decker, Senior Assistant Attorney General; Ray Crouch, Jr., District Attorney General; and Billy H. Miller, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTUAL BACKGROUND

On November 15, 2021, and pursuant to Tennessee Code Annotated section 40-11-127, the district attorney general for the Twenty-Third Judicial District moved the Dickson County Circuit Court to suspend or remove Tennessee Bonding Company ("the

Company") from the list of approved bonding companies.[1]  As identified in an amended motion filed a week later, the State asserted that grounds for suspension or removal existed under Tennessee Code Annotated section 40-11-125(a)(2) because the Company had unpaid final forfeitures in the following seven cases:[2]

| Name | County | Date of Final Forfeiture | Amount of Final Forfeiture |
|---|---|---|---|
| *Johnson* | Dickson County | September 15, 2021 | $25,000 |
| *Adams* | Dickson County | August 19, 2021 | $8,000 |
| *Garcia* | Dickson County | August 13, 2021 | $5,000 |
| *Mayes* | Cheatham County | October 21, 2021 | $6,500 |
| *Palmer* | Cheatham County | October 21, 2021 | $1,000 |
| *Parker* | Cheatham County | October 21, 2021 | $4,000 |
| *Wakefield* | Cheatham County | October 21, 2021 | $5,000 |

In its responses to the motion, the Company acknowledged that final forfeitures had been issued in the cases identified by the State.  However, the Company requested that the motion be denied, and it offered the following explanations for each of the cases.

First, the Company addressed the three cases originating from Dickson County.  As to the *Johnson* case, the Company explained that it had filed a motion for relief from the forfeiture on September 23, 2021, about a week after the final forfeiture was entered.  However, the Company asserted that it had not received a response from the court with respect to its motion.

As to the *Adams* case, the Company responded that it faxed a motion for relief to the Dickson County Circuit Court on October 19, 2021, asserting that Mr. Adams was

---

[1]  "Upon motion, any district attorney general may prefer charges to have a bail bondsman stricken from the approved list pursuant to § 40-11-125 with the same provisions for notice, answer and hearing before the court, and the same right of appeal."  Tenn. Code Ann. § 40-11-127.

[2]  In its original motion, the State raised an additional ground but abandoned that other ground prior to the hearing on the motions.  For sake of simplicity, we refer to the original and amended motions as "the motion."

incarcerated. However, after being notified that any requests for extension or relief were routinely denied after the entry of the final forfeiture, the Company represented that it paid the *Adams* final forfeiture on November 18, 2021.

Regarding the *Garcia* case, the Company explained that it had attempted to request an extension by faxing a motion to the Dickson County Circuit Court on August 19, 2021. However, the clerk of the general sessions court informed the Company that the court routinely denied requests for an extension or other relief after a final forfeiture had been entered. The Company also asserted that, although exhibits attached to the State's original motion reflected that "D. Thompson" had signed and accepted receipt of the forfeiture notice in *Garcia*, no one by that name was employed by the Company at the time the receipt was signed, and the Company was unsure who received the notice. Nevertheless, the Company stated that it paid the final *Garcia* forfeiture on November 18, 2021, shortly after the State filed its original motion for suspension.

The Company then addressed the remaining four final forfeitures, which all originated from the Cheatham County General Sessions Court. The Company asserted that in *Mayes*, it was relieved from surety because the defendant in *Mayes* was deceased. The Company asserted that in *Parker*, the final forfeiture date had been extended to February 22, 2022. With respect to *Palmer* and *Wakefield*, the Company represented that it had been previously "relieved of the bond liability" in each case. The Company also submitted exhibits purporting to show that the defendants in *Palmer* and *Wakefield* were incarcerated.

The trial court convened a hearing on November 29, 2021. At this hearing, the State orally amended its motion to allege an additional ground for suspension or removal: that the Company had made false statements in two semi-annual reports filed with the Dickson County Circuit Court, in violation of Tennessee Code Annotated section 40-11-308. As to each of these reports, the State alleged that the Company affirmatively represented under oath that it also had the authority to write bonds in certain other judicial districts, including the Tenth Judicial District. The State also introduced exhibits, though, reflecting that on December 18, 2020, the Criminal Court for the Tenth Judicial District had suspended the Company's bonding privileges and that these privileges were not reinstated until November 19, 2021. Because the Company's semi-annual reports were filed while the Company was suspended in the Tenth Judicial District, the State asserted that each semi-annual report was false.

## A.    THE STATE'S PROOF

The State called three witnesses with respect to the *Johnson* forfeiture.  The State first called Ms. Leslie Adcock, who was the Chief Deputy Clerk for the Dickson County Circuit Court.  Ms. Adcock testified that she was responsible for sending out notices regarding bond issues.  She stated that a conditional order of forfeiture was filed in *Johnson* on March 16, 2021, and that she mailed the final order of forfeiture to the Company on September 15, 2021.  The State's second witness, Ms. Marie Finn, a deputy clerk in the criminal division, testified that the Company had not filed any response regarding the conditional or final forfeiture in *Johnson*.  The State's third witness, Dickson County Circuit Court Clerk Pam Lewis, testified that the Company had not paid the bond as of the date of the hearing.

Ms. Lewis also testified that her office had not received a motion or telephone call from the Company regarding the *Johnson* forfeiture, though she noted that there could be occasional "glitches" with the fax machine.  Each of these witnesses confirmed that the fax number for the Circuit Court Clerk appeared on the coversheet of a September 23, 2021 motion asking for the Company to be relieved as surety in *Johnson*.

With respect to the two remaining Dickson County forfeitures, *Adams* and *Garcia*, the State presented the testimony of the Dickson County General Sessions Court Clerk, Ms. Leslie Shelton.  Ms. Shelton testified that the Company did not pay the final forfeitures in either case until three or four days after the State sought to terminate the Company's bonding privileges.  Ms. Shelton testified that in *Adams*, the Company received notice of the final forfeiture on September 28, 2021.  Although the Company filed a motion for exoneration on October 5, 2021, the court denied the motion the next day, and the Company did not pay the final forfeiture until November 19, 2021.  Ms. Shelton testified that in *Garcia*, the Company received the notice of final forfeiture on August 18, 2021.  She confirmed that, although the Company faxed a request for an extension to the general sessions court on the next day, the court did not rule upon the motion.

With respect to the Cheatham County forfeitures, *Mayes*, *Palmer*, *Parker*, and *Wakefield*, the State called Judge Phillip Maxey from the Cheatham County General Sessions and Juvenile Court to testify.  Judge Maxey identified the orders of "final forfeiture and scire facias" that he entered on October 21, 2021, in each of these cases.  He also testified that he signed exonerations of the *Mayes*, *Palmer*, and *Wakefield* bonds on November 22, 2021, and that he granted an extension of the final forfeiture in *Parker*.

## B. THE COMPANY'S DEFENSE

In defense of the motion, the Company called its president and co-owner, Mr. Kenneth Holmes, to testify. Mr. Holmes first addressed the issue regarding the veracity of the Company's 2021 semi-annual reports. Mr. Holmes explained that, although he was aware of the "discrepancy" in the semi-annual reports regarding the Company's ability to write bonds in the Tenth Judicial District, he had misunderstood the question, thinking it "had to do with liability[.]" The Company "kept" the Tenth Judicial District on the report because they had been suspended due to an administrative error in the amount of outstanding bonds. After the error was corrected, the Tenth Judicial District reinstated the Company's ability to write bonds. According to Mr. Holmes, the Company included the Tenth Judicial District on the semi-annual report "due to the fact that we had a lot of active liability there," and the Company planned to "open up back there" once the administrative error was corrected.

On cross-examination, Mr. Holmes acknowledged that the provision in question on the semi-annual report stated, "The entity also writes bonds in the following districts." Mr. Holmes conceded that the provision did not include the word "liability." He further conceded that at the time the Company filed its December 31, 2020, and June 30, 2021, semi-annual reports, the Company was suspended from writing bonds in the Tenth Judicial District. Ultimately, Mr. Holmes acknowledged that the Company's representation that it wrote bonds in the Tenth Judicial District was a misrepresentation, but he insisted that the statement was not an intentional misrepresentation.

With respect to the final forfeitures in the seven cases at issue, Mr. Holmes testified that "to the best of [his] knowledge," the final forfeitures in *Johnson*, *Adams*, and *Garcia* were not "served with proper service." He explained that the State's identification of the cases in its motion to suspend the Company's ability to write bonds "was the first time we're hearing about any of it[,]" and "we moved ahead immediately to satisfy it, as we would with anything that we were informed about[.]" Mr. Holmes also said that the service for one of the final forfeitures was "signed for [by] somebody that I have never heard of" named "G. Thompson." Mr. Holmes thought he had thirty days after he received the final forfeiture to pay it.

Mr. Holmes agreed that, except for one case, the Company had not sought relief in the relevant cases until after a final forfeiture had been entered. As to the *Johnson* case, Mr. Holmes said that he thought a motion for relief had been filed "due to [the defendant's] being in custody" and that he was ready to pay the outstanding bond forfeiture on the day of the hearing. Mr. Holmes also testified that the Company did not receive the court's denial of its motion for relief in *Adams*, and he was unaware whether the court had ever ruled on the similar motion filed in *Garcia*. Mr. Holmes agreed that the Company had not

previously taken steps to determine whether courts had addressed its motions, though the Company had since revised its procedures.

Mr. Holmes stated that after the Company was informed of the conditional forfeitures in the four Cheatham County cases, the Company's attorney drafted motions to relieve the Company of surety because the defendants were either deceased or in custody. He maintained that "Cheatham County doesn't want attorneys to present the motions and orders there, they want the [bondsmen] to do it." Accordingly, the bondsmen presented the attorney's motions to the court. Mr. Holmes thought the motions were "reintroduced" after the State filed its motion to have the Company suspended from writing bonds.

### C. THE TRIAL COURT'S RULING AND APPEAL

At the conclusion of the hearing, the trial court granted the State's motion and revoked its approval of the Company to operate as an approved bonding company in the Twenty-Third Judicial District. In particular, the trial court found that the Company had violated Tennessee Code Annotated section 40-11-125 and Local Rule 24.04(c) by failing to pay final forfeitures. The trial court noted that the Company was not relieved as surety automatically by sending notice that a defendant was incarcerated and that it should have ensured the trial court filed an order relieving it as surety. With respect to the *Johnson* forfeiture in particular, the trial court declined to grant relief because no motion had been filed with the clerk's office, and it noted that the Company could request relief "by filing a proper notice of the hearing and setting it for a hearing . . . ."

With respect to the Company's semi-annual reports, the trial court found that Mr. Holmes was "less than forthcoming" in his testimony about the Company's representations in those reports. The court concluded that Mr. Holmes was arguing "to excuse his failure to provide the information to this Court that accurately shows what districts he writes in." In the court's later written order, the court found that "in its annual report to this District, [the Company] showed that it was authorized to write bonds in [the Tenth Judicial] District, when in fact it had been suspended."

In its written order, which was entered on January 19, 2022, the trial court observed that the Company "may re-apply for approval upon resolution of all outstanding forfeitures." The Company filed its notice of appeal on December 7, 2021, shortly after the oral announcement. Although premature, the notice of appeal is nevertheless timely, as it is "treated as filed after the entry of the judgment from which the appeal is taken and on the day thereof." Tenn. R. App. P. 4. We respectfully affirm the judgment of the trial court.

- 6 -

## STANDARD OF APPELLATE REVIEW

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). The principal issue in this case is whether the trial properly revoked the Company's authority to write bonds because a final forfeiture remained unpaid at the time of the hearing and because the Company had filed two semi-annual reports containing a false statement.

Tennessee Code Annotated section 40-11-125(d) provides that an appeal from a trial court's suspension or revocation of a professional bondsman's ability to write bonds "shall be heard de novo." This statute includes the present action, as a "professional bondsman" is defined as meaning any "firm, partnership or corporation" that is "engaged for profit in the business of furnishing bail, making bonds or entering into undertakings, as surety, in criminal proceedings[.]" Tenn. Code Ann. § 40-11-301(4)(A). "Under this de novo standard, the parties are entitled to a reexamination of the whole matter of law and fact." *In re Cox*, 389 S.W.3d 794, 798 (Tenn. Crim. App. 2012) (quoting *State v. Cunningham*, 972 S.W.2d 16, 18 (Tenn. Crim. App. 1998)) (internal quotation marks omitted).

## ANALYSIS

It is well-established that "[a] trial court has full authority to determine who should be allowed to make bonds in its court. . . . [And,] a trial court has the inherent power to administer its affairs, including the right to impose reasonable regulations regarding the making of bonds." *Hull v. State*, 543 S.W.2d 611, 612 (Tenn. Crim. App. 1976). The trial court may "regulate the professional bondsmen executing bonds in its court, and it may impose reasonable limitations on the total liability of such bondsmen's undertakings in that court." *In re Byrd*, No. W2009-01257-CCA-R3-CD, 2010 WL 161500, at *1 (Tenn. Crim. App. Jan. 15, 2010) (citing Tenn. Code Ann. §§ 40-11-301 to 40-11-306).

Generally, a bond "is valid and binding on the defendant and his sureties" until it is time to appeal a finding of guilt to this Court, provided there has not been a disposition such as an acquittal, agreement with the State, or retirement. *In re Rader Bonding Co., Inc.*, 592 S.W.3d 852, 859 (Tenn. 2019) (citing Tenn. Code Ann. §§ 40-11-130(a)(1), -138(b)). If there has been no disposition and a defendant has failed to appear in accordance with the bond agreement, a "trial court may enter a conditional judgment of forfeiture against the defendant and the defendant's sureties." *Id.* (citing Tenn. Code Ann. § 40-11-201). If the surety has failed to satisfy the court that it is entitled to relief within 180 days, a trial court may enter a final forfeiture against the defendant and his sureties. *Id.* (citing Tenn. Code Ann. § 40-11-139(b)). A surety may be exonerated from forfeiture by surrendering the defendant before the payment of forfeiture is due or by filing a motion to

be released from bond pursuant to Tennessee Code Annotated section 40-11-204(a). *Id.*; *see also In re Paul's Bonding Co., Inc.*, 62 S.W.3d 187, 193-94 (Tenn. Crim. App. 2001).

In this appeal, the Company challenges the trial court's ruling, arguing that it had paid all final forfeitures, or had requested other relief, by the time of the hearing. With respect to the *Johnson* forfeiture, the Company argues that the trial court stated that it could reset the motion to relieve the Company as surety. The State responds that revocation of the Company's ability to write bonds is appropriate because a final forfeiture remained unpaid at the time of the hearing, and the Company had filed two false semi-annual reports. Upon de novo review, we agree with the State.

### A.      UNPAID FINAL FORFEITURES

The Company first argues that it should not be suspended because the "[p]roof presented at the hearing shows that all forfeitures were satisfied." Tennessee Code Annotated section 40-11-125(a) provides that a bondsman may be suspended from writing bonds if the bondsman "[h]as a final judgment of forfeiture entered against the bondsman which remains unsatisfied[.]" The Local Rules of Practice for the Twenty-Third Judicial District are to the same effect. *See* Tenn. 23rd J. Dist. R. 24.04(c) (stating that if a bonding entity does not pay a forfeiture within thirty days of the forfeiture becoming final, "the bonding entity and its agents shall be suspended from making further bonds").

Although the Company argues that it may avoid suspension simply by paying an overdue final forfeiture after the trial court sets a suspension hearing, the record fails to show that the Company has paid all overdue final forfeitures. At the evidentiary hearing, the State offered testimony from employees in the clerk's office to establish that the *Johnson* final forfeiture was sent to the Company on September 15, 2021, and that the Company had neither paid nor filed a response with respect to that final forfeiture as of the hearing date. Indeed, even Mr. Holmes acknowledged at the hearing that the *Johnson* forfeiture was outstanding, though he stated that he was willing to pay the forfeiture at the time of the hearing. No party has sought to supplement the record with post-judgment facts for our consideration in this de novo review showing that the Company has satisfied the *Johnson* forfeiture or has been granted other relief. *See* Tenn. R. App. P. 14(a).

In response, the Company maintains that no forfeitures were outstanding because the trial court said that the *Johnson* "motion could be reset." We respectfully disagree for two reasons. First, the proof at the hearing shows that the Company had not actually filed any such motion with the clerk, whether to extend the final forfeiture in *Johnson* or to relieve the Company as surety. And second, the trial court did not say that the *Johnson* "motion could be reset." It merely recognized that the Company could not obtain relief on this forfeiture until the Company filed a proper notice and set the matter for a hearing. *See*

Tenn. 23rd J. Dist. R. 24.04(d) ("No bonding entity shall be released or allowed to withdraw from a bond without first filing a motion in writing with the Court and being approved to withdraw.").

The record contains no indication that the Company has satisfied the final forfeiture in *Johnson* or that it has been granted other appropriate relief with respect to this forfeiture. As such, we affirm the trial court's suspension of the Company on this basis.

## B. STATEMENTS IN THE COMPANY'S SEMI-ANNUAL REPORTS

The Company next argues "that they have not made or filed false semi-annual reports." Our general assembly requires that a bondsman file with the court clerk a report of the bondsman's assets and liabilities twice a year. *See* Tenn. Code Ann. § 40-11-303; *see also* Tenn. 23rd J. Dist. R. 24.06(e). These semi-annual reports require the bondsman to disclose, among other things, "[t]he full amount of the bondsman's liability as surety on bonds, bail, secured costs and fines," and "[t]he full amount of the bondsman's liabilities on forfeitures of bonds or bail, in which either conditional or final judgments have been entered against the bondsman in any court and which remain unsatisfied[.]" Tenn. Code Ann. § 40-11-303(a)(3), (4). If a bondsman has made and filed a false semi-annual report, then the trial court may order that the bondsman be prohibited from executing bonds until the court is "satisfied that the bondsman has complied with this part or the orders of the court[.]" Tenn. Code Ann. § 40-11-306(4).

At the evidentiary hearing, the State submitted copies of two semi-annual reports in which it contended that the Company submitted false information. Both reports asked the Company to identify the districts in which it "also writes bonds," and the Company listed the Tenth Judicial District, among others, as a district in which it "writes bonds." However, the undisputed proof shows that, at the time that the Company filed each of these semi-annual reports, the Company had been suspended from writing bonds in the Tenth Judicial District due to its writing bonds in excess of its authorized limits.

At the hearing, Mr. Holmes acknowledged that the Company was suspended from writing bonds in the Tenth Judicial District at the time the reports were filed. Although Mr. Holmes explained his belief that this question asked about where the Company had outstanding liabilities, this limited interpretation was not reasonable. The question asked specifically for the Company to identify the districts in which it "also writes bonds." Clearly, the Company could only write bonds in those districts where a court had authorized it to do so. Tenn. Code Ann. § 40-11-124(a). As such, the Company's present-tense representation that it "also writes bonds" in the Tenth Judicial District was objectively false at the time the representation was made, as it had no authority to do so in that district.

No party contests that the trial court could properly request this information. However, in response, the Company maintains that its suspension on this basis was improper because "the listing of this district . . . was not meant to be purposely misleading or falsifying a semi-annual report." For two reasons, we respectfully disagree. First, a principal purpose of requiring bondsmen to file semi-annual reports pursuant to section 40-11-303 is to assist the trial court in its regulation of the companies that it has authorized to conduct business. *See In re Byrd*, 2010 WL 161500, at \*1 ("It is the trial court's function to regulate the professional bondsmen executing bonds in its court, and it may impose reasonable limitations on the total liability of such bondsmen's undertakings in that court." (citing Tenn. Code Ann. §§ 40-11-301 to -306)). It is also clear that the prohibition on making and filing false reports contained in Tennessee Code Annotated section 40-11-306(4) is meant to ensure the accuracy of the information contained in those reports submitted for the trial court's consideration.

Section 40-11-306(4) does not require that an objectively false statement in the semi-annual reports be made with an affirmative intent to deceive, and any judicial crafting of an intent requirement would undermine the regulatory purpose furthered by the semi-annual reports. When a bondsman supplies inaccurate information about its liabilities to a trial court, the court's ability to fulfill its regulatory responsibilities is impaired. This impairment occurs irrespective of whether the misrepresentation is intentional or is the result of neglect or inattention. As such, we decline to add an intent requirement that is not evident in the plain language of the statute. *See In re Rader Bonding Co., Inc.*, 592 S.W.3d at 860 ("'Our role in statutory interpretation is to carry out legislative intent without broadening or restricting the statute beyond its intended scope.'" (quoting *State v. L.W.*, 350 S.W.3d 911, 916 (Tenn. 2011))).

Second, to the extent that the Company's argument is based upon Mr. Holmes's testimony that he simply misunderstood what was being asked, we note that the trial court did not credit that testimony with respect to the circumstances leading to the Company's filing of the semi-annual reports. On our de novo review of the transcript, exhibits, and record as a whole, we agree with the trial court's assessment. *Cf. State v. Ellis*, 453 S.W.3d 889, 907 (Tenn. 2015) (in the context of a de novo review of a trial by a successor judge acting as thirteenth juror, stating that "[w]e reiterate that most components of witness credibility may be determined from the record."); *Finney v. Franklin Special Sch. Dist. Bd. of Educ.*, 576 S.W.3d 663, 680 (Tenn. Ct. App. 2018) (discussing credibility determinations in a de novo appeal under the Teachers' Tenure Act based upon a review of the record). As such, based upon our de novo review, we conclude that the Company's filing of an objectively false statement in two semi-annual reports also supports the trial court's decision to suspend the Company's bonding privileges.

Finally, the Company argues that it should not have been suspended on this basis because, by the time of the hearing, the Company's authority to write bonds in the Tenth

Judicial District had been reinstated. Importantly, though, Tennessee Code Annotated section 40-11-306(4) prohibits the Company from "making and filing" false reports. Thus, the focus of the Company's conduct is properly placed on whether the information contained in the semi-annual reports was false at the time the reports were filed. Because the Company's representations were objectively false at the time that it filed the semi-annual reports, the trial court's suspension of the Company on this basis was, and remains, proper "until the court becomes satisfied that the bondsman has complied with this part or the orders of the court." Tenn. Code Ann. § 40-11-306.

The record contains no indication that the Company has corrected the false representations in its previously filed semi-annual reports. As such, we affirm the trial court's suspension of the Company on this basis.

## CONCLUSION

In summary, after conducting a de novo review, we respectfully affirm the trial court's decision to suspend Tennessee Bonding Company's bonding privileges pending a petition for reinstatement after the Company resolves the *Johnson* forfeiture and comes into compliance with Tennessee Code Annotated sections 40-11-303 and -306.

_____
TOM GREENHOLTZ, JUDGE